**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DARRIN WRIGHT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:15-cv-01364-JPG |
| | ) | |
| **CLARK SCHULZE,** | ) | |
| **MAJOR GARRETT,** | ) | |
| **KAREN UNDERWOOD,** | ) | |
| **CARLA KENABLE,** | ) | |
| **CRAIG FOSTER,** | ) | |
| **DR. CALDWELL,** | ) | |
| **UNKNOWN PARTY, and** | ) | |
| **AMY BECK** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Darrin Wright is currently incarcerated at Vandalia Correctional Center ("Vandalia"). Proceeding *pro se*, Plaintiff has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against several Vandalia employees. He seeks monetary and specific relief. (Doc. 1 at 13.)

This matter is now before the Court for a preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

**Background**

Plaintiff's complaint is composed of five sections, respectively titled "Food," "Clothing," "Law Library," "Racial Discrimination," and "Due Process Violation." In the "Food" section, Plaintiff, who is a diabetic, alleges that on March 30, 2015, he requested a "medical diet" from Dr. Caldwell, owing to the fact that "all [the prison] serve [sic.] is pasta and sugary stuff." Dr. Caldwell, however, denied his request and informed Plaintiff that he was not going to include that he made such a request in his medical records because the food required to maintain such a diet is not available in Vandalia. Plaintiff then wrote a request to the prison kitchen and to the warden, Craig Foster, but received no responses. He inquired as to the lack of medical diets for diabetic inmates to a food service employee (identified merely by the last name "Torbeck"),[1] who informed Plaintiff that he "get[s] the same shit as everybody else."

Also under the "Food" section, Plaintiff complains that, due to lack of capacity, inmates are rushed in and out of the chow hall with little time to sit down and eat. Many are even forced to eat while they are leaving the chow hall. But, he alleges, inmates who deliver coffee, tea, and ice water to correctional officers are allowed to eat in the officers' kitchen and given additional time. Plaintiff also notes that the food available to Vandalia's inmates is usually "soy beans, pasta, and sugar"; there is very rarely any fresh fruit available to eat.

Under the "Clothing" section, Plaintiff decries the denial of "constitutionally proper clothing." Plaintiff complains about three different events in this section. First, Plaintiff alleges that he was given a short-sleeved "summer shirt" during the winter, even though the temperature reaches below zero degrees Fahrenheit during such time. Second, he states that the officer in charge of the clothing room denied his request for thermal underwear. Lastly, Plaintiff complains

---

[1] Torbeck is referenced in the body of the complaint, but not in the complaint's caption or "Jurisdiction" section. Therefore, the Court does not consider Torbeck to be a party to this action.

that he was unable to acquire new boots. His current boots were old, and holes were forming in their soles. Plaintiff told the officer in charge of the clothing room that he needs to keep his feet dry because he is a diabetic. The officer told him to check with the medical department. At the medical department, Dr. Caldwell merely told Plaintiff to check with the clothing room. Dr. E. Afuwape[2] also refused Plaintiff's request.

The complaint's "Law Library" section alleges that three different individuals at three different times denied Plaintiff access to the law library and legal supplies. The first of these individuals, Karen Underwood, did not allow Plaintiff use of the law library's paper or typewriter, instead telling him to buy the supplies he needed at the commissary. She only allowed Plaintiff to use ink pens, but he had to return them. Underwood also denied Plaintiff "copywork," by which the Court assumes the Plaintiff means use of a copy machine. Plaintiff also broadly alleges that Carla Kenable denied him access to the law library, and that she refused to make copies for him. The third individual, Amy Beck, told Plaintiff he could only use the law library typewriter in conjunction with appeals for clemency. When Plaintiff told her to just give him paper, she allegedly said, "you're not going to type anyway." The Court assumes this means Beck did not give Plaintiff paper. Beck also denied Plaintiff access to the DVD transcript of one of his court proceedings and, in response to a request for copies, told him he was "a pain in [her] ass."

Also under the "Law Library" section, Plaintiff states that his appeal in another case was dismissed for lack of prosecution because the law library closed at some point. He does not elaborate.

---

[2] As with Torbeck, *see supra*, note 1, because Dr. Afuwape is not referenced in the complaint's caption or "Jurisdiction" section, the Court does not consider him to be a party to this action.

Under the "Racial Discrimination" heading, Plaintiff states that Defendant Major Garrett made racially-charged statements to Plaintiff when he did not move fast enough in line at the milk spout in the kitchen. Specifically, Garrett told Plaintiff, "I know you are black but you can still under stand [sic.]." He also referenced the nationally-covered protests that erupted in Ferguson, Missouri, after an unarmed black man was shot and killed by a white police officer, and discussed killing black people. Plaintiff filed a grievance against Garrett, but Defendant Clark Schulze did not accept it.

Also under "Racial Discrimination," Plaintiff states that Schulze denied Plaintiff's request to go to work release (which Plaintiff requested due to his diabetes).

Finally, under "Due Process Violation," Plaintiff condemns what he terms the unconstitutional grievance forms and procedures. He states that the forms do not provide receipts at the filing stage, the warden many times does not respond, and that the disciplinary committee is unfair and fails to comply with administrative guidelines.

## Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

- **COUNT 1:** Dr. Caldwell, Unknown Party, and Craig Foster violated Plaintiff's constitutional rights when they refused his requests for a "medical diet."

- **COUNT 2:** Unknown Party violated Plaintiff's constitutional rights when he/she only provided Plaintiff with a short-sleeved "summer shirt" during the winter.

  **COUNT 3:**  Unknown Party violated Plaintiff's constitutional rights when he/she denied his request for thermal underwear.

  **COUNT 4:**  Unknown Party and Dr. Caldwell violated Plaintiff's constitutional rights when they denied him new boots.

  **COUNT 5:**  Karen Underwood violated Plaintiff's constitutional rights when she did not allow Plaintiff to use the law library's paper or typewriter, only allowed Plaintiff to use ink pens that he had to return, and denied him use of the copy machine.

  **COUNT 6:**  Carla Kenable violated Plaintiff's constitutional rights when she denied him access to the law library and refused to make copies for him.

  **COUNT 7:**  Amy Beck violated Plaintiff's constitutional rights when she told Plaintiff he could only use the law library typewriter in conjunction with appeals for clemency, refused him paper, denied him access to the DVD transcript of one of his court proceedings, and, in response to a request for copies, when she told him he was "a pain in [her] ass."

  **COUNT 8:**  Unknown Party violated Plaintiff's constitutional rights when he/she closed the law library, causing Plaintiff's case to be dismissed for lack of prosecution.

  **COUNT 9:**  Major Garrett violated Plaintiff's constitutional rights when he made racially demeaning comments to Plaintiff.

  **COUNT 10:**  Clark Schulze violated Plaintiff's constitutional rights when he denied Plaintiff's grievance against Major Garrett.

  **COUNT 11:**  Clark Schulze violated Plaintiff's constitutional rights when he denied Plaintiff's request to for work release (which Plaintiff requested due to his diabetes).

  **COUNT 12:**  The grievance forms and procedures are unconstitutional.

  **Count 1** does not survive preliminary review. A prison official's "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment, in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); U.S. CONST. amend. VIII. To state an Eighth Amendment claim for deficient medical care, prisoners must establish

that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Diabetes is an objectively serious medical condition. *Bowers v. Milwaukee County Jail Medical Staff*, 52 F. App'x 295, 298 (7th Cir. 2002) (citing *Egebergh v. Nicholson*, 272 F.3d 925, 928 (7th Cir. 2001)). Whether Wright has stated a valid Eighth Amendment claim, therefore, turns on whether he has alleged facts indicating the Defendants acted with deliberate indifference to his health or safety.

Prison officials act with deliberate indifference when they "realize[] that a substantial risk of serious harm to a prisoner exists, but then disregard[] that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776-77 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). The Eighth Amendment, however, does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Wright does not allege that Dr. Caldwell, the unknown kitchen employee, or Warden Foster were aware of the existence of a substantial risk of serious harm to Wright. The complaint merely states that the three employees refused him a "medical diet," without explaining what exactly such a diet is. Without any more detail, the Court cannot discern the presence of a possible constitutional injury, nor is it satisfied that the Defendants would be able to adequately respond to the allegations. Accordingly, **Count 1** is dismissed without prejudice.[3]

---

[3] So far as Wright is attempting to assert a claim when he laments the hurried atmosphere of the chow line, the absence of healthy foods in the prison, and the favoritism paid to certain prisoners by prison officials, such a claim is dismissed without prejudice, due to the fact that he does not name any defendants, nor allege any specific actions that may be unconstitutional, in association with these instances.

**Counts 2**, **3**, and **4** do not survive preliminary review. The Seventh Circuit has explained:

> Prison officials have a duty, in light of the Eighth Amendment's prohibition against cruel and unusual punishment, to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*[, 511 U.S. at 832]. To determine whether an inmate's Eighth Amendment rights were violated by a deprivation, we examine the alleged violation both objectively and subjectively. *See id.* at 834 [.]

*Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001). As in the case of a prisoner's medical needs, a conditions of confine claim impels the court to determine (1) whether the deprivation was "objectively serious," and (2) whether the prison official acted with "deliberate indifference to [the] inmate['s] health or safety." *Id.* (internal citations and quotation marks omitted).

Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). As to the objective component of the claim, the condition described must result in unquestioned and serious deprivations of basic human needs or deprive the inmate of the minimal civilized measure of life's necessities. *Id.* at 347. *Accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989).

A detailed recitation of the facts giving rise to a complaint is not required; however, Wright states only bare legal conclusions that he was unconstitutionally deprived "proper clothing." *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("abstract recitations of the elements of a cause of action or conclusory legal statements" are not adequate to state a claim). He alleges he was only given a paper-thin, short-sleeve shirt during the winter, and that he was refused his requests for thermal underwear and new boots, but he does not provide enough information for the Court to infer, for example, that he was subjected to extreme temperatures for an inordinate length of time with only inadequate clothing to protect him. *See, e.g.*, *Mays v.*

*Springborn*, 575 F.3d 643, 648-49 (7th Cir. 2009) (prisoner who had hurt ears, numb hands, feelings of frostbite, and caught colds because he was never issued adequate winter clothing showed only that he was subject to the "usual discomforts of winter," not the objectively serious harm required to state an Eighth Amendment claim). While he claims that he requires new boots because he is diabetic, he does not connect his allegation with any serious physical harm or substantial threat to his health or safety. Therefore, **Counts 2-4** are dismissed without prejudice.

Additionally, **Counts 5**, **6**, 7, and **8** do not survive preliminary review. Restrictions on an individual's access to a law library do not, standing alone, state a constitutional claim. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) ("[T]he mere denial of access to a prison law library or to other legal materials is not a violation of a prisoner's rights; his right is to access *the courts*."). An inmate has no constitutional claim that he has been denied access to the courts unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded. *Lew v. Casey*, 518 U.S. 343, 352-53 (1996). **Counts 5-7** make no such allegations and are, therefore, dismissed without prejudice. While **Count 8** states that an appeal in a prior case was dismissed due to the temporary closure of the law library at one point, he does not specify why the library was closed, who closed it, or why its closure impeded his access to the courts. Therefore, **Count 8** is also dismissed without prejudice.

**Count 9** is similarly dismissed. Ordinarily, isolated incidents of verbal harassment do not rise to the level of a constitutional violation. "[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment." *Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009). *See also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection

of the laws."). While a prisoner's claim that he is being harassed by a prison official may be actionable when done maliciously, *Hudson v. Palmer*, 468 U.S. 517, 528-30 (1984), Wright does not allege Garrett went beyond simple or occasional verbal harassment. Therefore, **Count 9** is dismissed without prejudice.

**Count 10** does not survive preliminary review. Although a counselor, grievance officer, or supervisor who receives a complaint may be liable if they are "personally responsible for the deprivation of a constitutional right," *Sanville*, 266 F.3d at 740 (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)), the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Because Wright does not allege that Schulze took part in any unconstitutional conduct that was the subject of the grievance, **Count 10** is dismissed without prejudice.

For similar reasons, **Count 12** does not survive preliminary review. Prison grievance procedures are not constitutionally mandated. Therefore, grievance proceedings do not implicate due process concerns per se. As such, **Count 12** is dismissed without prejudice.

**Count 11** does not survive preliminary review. In the absence of a state rule creating a specific entitlement, prisoners have no liberty interest in placement. *See Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992). Illinois law leaves assignment to work release, like any other transfer, to the discretion of prison officials. *See* 20 ILL. ADM. CODE § 455.30. These rules merely establish

eligibility for such placement, and eligibility by itself does not confer an entitlement. *DeTomaso*, 970 F.2d at 213. Accordingly, **Count 11** is denied without prejudice.

## Pending Motion

Wright filed a motion for recruitment of counsel (Doc. 3). That motion is **DENIED as MOOT**.

## Disposition

All counts and Defendants are **DISMISSED without prejudice**. Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: January 6, 2016**

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**
